# EXHIBIT A

**Dylan Vella, et al. v. MacD Helicopters, Inc., et al.**

Electronically Filed by Superior Court of California, County of Orange, 02/15/2024 04:36:08 PM.
30-2024-01379879-CU-PL-CJC - ROA # 2 - DAVID H. YAMASAKI, Clerk of the Court By S. Berry, Deputy Clerk.
Case 2:24-cv-02344 Document 1-1 Filed 03/21/24 Page 2 of 17 Page ID #:6

PANISH | SHEA | RAVIPUDI LLP
ADAM SHEA, State Bar No. 166800
  ashea@psbr.law
RYAN A. CASEY, State Bar No. 271865
  rcasey@psbr.law
NICHOLAS W. YOKA, State Bar No. 314906
  nyoka@psbr.law
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
Telephone: 310.477.1700
Facsimile: 310.477.1699

Attorneys for Plaintiffs

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

# COUNTY OF ORANGE

Assigned for All Purposes
Judge David A. Hoffer

| | |
|---|---|
| DYLAN VELLA, an individual, by and through her Conservator, JOHN VELLA, SR.; KRISTI CAMERON TOVAR, an individual; <br><br> Plaintiffs, <br><br> v. <br><br> MACD HELICOPTERS, INC., an Arizona Corporation; ASTRONAUTICS CORPORATION OF AMERICA, a Wisconsin Corporation; and DOES 1 through 100, inclusive, <br><br> Defendants. | Case No. 30-2024-01379879-CU-PL-CJC <br><br> **COMPLAINT FOR DAMAGES:** <br><br> 1. **STRICT PRODUCT LIABILITY** <br><br> 2. **NEGLIGENCE – WRONGFUL DEATH AND PRODUCT LIABILITY** <br><br> 3. **BREACH OF WARRANTIES** <br><br> 4. **SURVIVAL ACTION** <br><br> **DEMAND FOR JURY TRIAL** |

COME NOW Plaintiffs Dylan Vella, an individual, by and through her Conservator, John Vella, Sr., and Kristi Cameron Tovar, an individual, for causes of action against Defendants MacD Helicopters, Inc. (DBA MD Helicopters, Inc.) (hereinafter "MDHI"), Astronautics Corporation of America ("ACA"), collectively referred to as "Defendants", and DOES 1-100, inclusive, and each of them, who complain and allege as follows:

/ / /

/ / /

/ / /

1
COMPLAINT FOR DAMAGES

**GENERAL ALLEGATIONS**

1. On or about February 19, 2022, at or around 18:34 local time, an MDHI helicopter, series 500N (MD520N), with registration number of N521HB ("Subject Helicopter"), operated by the Huntington Beach Police Department ("HBPD") as a public aircraft,[1] was destroyed when it impacted the water off Newport Beach, California after suffering an inflight loss of control. The trained and experienced non-party HBPD pilot, RJ Garwood — who had over 1,600 hours on the aircraft type — escaped with injuries. The onboard Tactical Flight Officer, Decedent Nicholas Vella, drowned while attempting to resurface following the crash.

2. The flight was conducted as a public operation under visual flight rules, with the police helicopter performing right turns at night over a waterfront peninsula, supporting officers on the ground.

3. The loss of inflight control was caused by a defect in the yaw stability augmentation system ("YSAS"), which is part of the autopilot, which is designed to assist the pilot to keep the helicopter from yawing by augmenting its directional stability. Here, the YSAS system experienced an un-commanded full right deflection of the YSAS actuator, causing the helicopter to aggressively yaw to the right. Mr. Garwood attempted to input corrective controls, but the helicopter did not respond and progressed into a spinning descent, with the aircraft impacting the water on Decedent Nicholas Vella's side.



---

[1] The Subject Helicopter was an MDHI helicopter, series 500N (MD520N), with a registration number of N521HB, with a manufacturer's serial number of LN084. The Subject Helicopter is a public aircraft owned and operated by the Huntington Beach Police Department. All references herein to the 500N series helicopter includes the Subject Helicopter, its YSAS system, and other systems, components, and manuals, without limitation.

# THE PARTIES

4. Plaintiff Dylan Vella is the surviving daughter of Decedent Nicholas Vella. At all times relevant herein, Plaintiff Dylan Vella was, and is, a resident of Laguna Beach, California. Plaintiff Dylan Vella has standing to bring a wrongful death cause of action, by and through her Conservator John Vella, Sr., as a wrongful death heir for Decedent Nicholas Vella, under section 377.60 of the California Code of Civil Procedure. John Vella, Sr., has been appointed by the Orange County Superior Court pursuant to Letters of Conservatorship signed on March 23, 2023, by Judge David H. Yamasaki, Case No. 30-2022-01261369-PR-LP-CJC, as the Conservator of the Estate and Person of Dylan Vella.

5. Plaintiff Kristi Cameron Tovar is the surviving spouse of Decedent Nicholas Vella. At all times relevant herein, Plaintiff Kristi Cameron Tovar was, and is, a resident of Anaheim, California. Plaintiff Kristi Cameron Tovar has standing to bring a wrongful death cause of action as a wrongful death heir for Decedent Nicholas Vella, under section 377.60 of the California Code of Civil Procedure.

6. Plaintiffs are informed and believe, and thereupon allege, that Defendant MacD Helicopters, Inc. is, and at all times herein relevant was, an Arizona corporation with a principal place of business at 4555 East McDowell Road, Mesa, Arizona 85215. Defendant MacD Helicopters, Inc. is authorized to do, has regularly done, and continues doing business in the State of California, and has systematically conducted business on a regular basis in the State of California, under and by virtue of the laws of the State of California.

7. Plaintiffs are informed and believe, and thereupon allege, that Defendant Astronautics Corporation of America is, and at all times herein relevant was, a Wisconsin corporation with a principal place of business at 135 West Forest Hill Avenue, Oak Creek, Wisconsin 53154. Defendant Astronautics Corporation of America is authorized to do, has regularly done, and continues doing business in the State of California, and has systematically conducted business on a regular basis in the State of California, under and by virtue of the laws of the State of California. Defendant Astronautics Corporation of America may be served with process through its registered California agent, CT Corporation System, 330 North Brand

Boulevard, Glendale, CA 91203.

8. At all times herein relevant, Defendants and DOES 1–100, and each of them, owned the type certificate, held the production certificate, distributed, licensed, manufactured, assembled, sold, designed, supplied, and supported the 500N series helicopters and its component parts, to include the YSAS system, and all associated manuals, warnings, and literature.

9. Plaintiffs are informed and believe, and thereon allege that, at all times herein relevant Defendants and DOES 1–100, and each of them, participated in and were actively engaged in the development, assembly, manufacture, and design of 500N series helicopters and their component parts, to include the YSAS system, and all associated manuals, warnings, and literature, and each of them approved, adopted, and ratified the design of the 500N series helicopters and their component parts, to include the YSAS system, and all associated manuals, warnings, and literature.

10. Plaintiffs are informed and believe, and thereon allege that, at all times relevant Defendants and DOES 1–100, and each of them, participated in and were actively engaged in developing instructions, warnings, manuals, training, and literature with respect to piloting, operations, and maintenance of and for the 500N model helicopters and each of their component parts, to include the YSAS system, and each of them approved, adopted, and ratified said documents for the 500N series helicopters, to include the YSAS system.

11. Defendants and DOES 1–100, and each of them, at all times herein, knew and intended that all 500N series helicopters, to include the YSAS system, would be purchased and used by purchasers and passenger-users, including Decedent Nicholas Vella and other passenger-users of public aircraft, without inspection for defects therein or in any of their component parts, manuals, warnings, or literature.

12. The true names and capacities, whether individual, corporate, associate, or otherwise, of defendant DOES 1–100, inclusive, are unknown to Plaintiffs, who are therefore sued by those fictitious names pursuant to the provisions of CCP section 474. Plaintiffs are informed and believe, and therefore allege, that each of those defendants was in some manner tortiously responsible for the events and happenings alleged in this complaint and legally caused the injuries

4
COMPLAINT FOR DAMAGES

1  and damages alleged herein. Plaintiffs will amend this Complaint to show their true names and
2  capacities when such has been ascertained.

3      13.    At all times herein mentioned, Defendants and DOES 1–100, and each of them, and
4  their aggregates, corporates, associates, and partners, were the agent, servant, employee, assignee,
5  permissive user, successor in interest, and/or joint ventures of each other, and were acting within
6  the time, purpose, or scope of such agency or employment or permission. All acts or omissions
7  alleged herein of each such defendant were authorized, adopted, approved, or ratified by each of
8  the other defendants.

9      14.    At all times relevant herein, Defendants' and DOES 1–100's personnel, and each of
10 them, were the agents, servants, and employees of Defendants and DOES 1–100, and each of
11 them, and were each acting within the course, scope, purpose, and authority of such agency and
12 employment, and with the full knowledge, permission, and consent of Defendants and DOES 1–
13 100, and each of them. Plaintiffs further allege that Defendants and DOES 1–100, and each of
14 them, are directly and/or vicariously, and/or for other reasons set forth herein, liable for the
15 actions, omissions, and negligence of Defendants and DOES 1–100 and/or their personnel, and
16 each of them, as alleged in this complaint.

17     15.    At the time of purchase, Defendants provided an express warranty concerning the
18 500N series helicopters, to include the YSAS system.

19

20 **JURISDICTION AND VENUE**

21     16.    This Court has personal jurisdiction over defendant MDHI, because: (1) MDHI has
22 purposefully availed itself of California's benefits by, among other things, promoting and selling
23 its products in the state, to include the Subject Helicopter; (2) The instant Complaint arises out of
24 or relates to MDHI's contacts with the forum because, among other things, the Subject Helicopter
25 crashed and caused injury and death here and; (3) The exercise of jurisdiction comports with
26 traditional notions of fair play and substantial justice. To wit, MDHI sold the Subject Helicopter to
27 the City of Huntington Beach, an incorporated city in California. Further, MDHI participates in
28 aviation trade shows within the state and has sold helicopters to other California law enforcement

5
COMPLAINT FOR DAMAGES

agencies, such as the California Department of Fish and Wildlife.[2] MDHI has also litigated multiple lawsuits in California courts as both a plaintiff and defendant. Further, despite doing business within California, MDHI has not obtained from the California Secretary of State a certificate of qualification to transact such intrastate business, thus subjecting it to personal jurisdiction under Cal. Corp. Code section 2105.

17. This Court has personal jurisdiction over Defendant ACA because: (1) ACA has purposefully availed itself of California's benefits by, among other things, systematically serving the California market by promoting and selling its products in the state, to include components of the Subject Helicopter, such as the YSAS system, through a series of at least four authorized dealers based in California; (2) The instant Complaint arises out of or relates to ACA's contacts with the forum as ACA has consistently marketed and sold the same YSAS system to California buyers for many years and; (3) The exercise of jurisdiction comports with traditional notions of fair play and substantial justice. Further, ACA participates in aviation trade shows within the state and has sold avionic components within the state for many years.[3] ACA is registered with the California Secretary of State.

18. In addition, a substantial part of the events, acts, or omissions giving rise to these claims, including but not limited to, the development, design, manufacture, assembly, testing, training, advertising, warranting, authoring, publishing, sale, and delivery of 500N series helicopters, and their component parts, to include the YSAS system, and associated manuals, warnings, and literature, occurred in California. When the Subject Helicopter was sold to the City of Huntington Beach, the manufacturer was the Boeing Company, with offices in California, before selling its light commercial helicopter lines, including the 500N series, to MDHI, making MDHI the successor corporation to Boeing's light commercial helicopter lines such that those contacts with California are imputed onto MDHI.

---

[2] MDHI's website and social media include promotional materials for their participation in in-state aviation conventions, and a picture of an MDHI helicopter belonging to the CDFW.

[3] ACA's website includes promotional materials for their participation in in-state aviation conventions.

19. Venue is proper with this Court pursuant to CCP section 395(a) in that the injuries caused by the negligence of defendants, as alleged herein, occurred in Orange County.

20. The damages alleged herein are in excess of the minimum jurisdictional limits of this court.

## FIRST CAUSE OF ACTION

**(Strict Product Liability By All Plaintiffs Against All Defendants and DOES 1-100, Inclusive)**

21. Plaintiffs incorporates by reference each prior and subsequent allegation as though fully set forth herein.

22. From the date of initial delivery through February 19, 2022, the Subject Helicopter and its component parts, to include the YSAS system, were in substantially the same condition as when it left Defendants' possession, except for minimal, normal, and reasonably foreseeable use.

23. At all times herein relevant, the Subject Helicopter was used as intended by Defendants, and in a manner reasonably foreseeable.

24. At all times herein mentioned, Defendants knew and intended that 500N series helicopters and their component parts, to include the YSAS system, and all associated manuals, warnings, recommendations for training, and literature, would be purchased by members of the public and used by the purchasers, operators, pilots, and passengers without inspection for defects which were present at the time of manufacture and delivery of the Subject Helicopter.

25. At all times herein relevant, the Subject Helicopter was defective in each of the following respects, which include but are not limited to:

    a. The failed YSAS system, and other component parts, contained manufacturing defects that caused the Subject Helicopter to experience an un-commanded full right deflection of the YSAS actuator, causing the helicopter to aggressively yaw to the right, enter an uncontrolled spinning descent, and impact with the water.

    b. Lack of effective warnings and emergency procedures in the event of YSAS

7
COMPLAINT FOR DAMAGES

        system failure;

    c. Failure to establish a life limit and replacement schedule for the YSAS system and its components, including without limits the YSAS actuator;

    d. Failure to report failures, malfunctions, and defects; and,

    e. Inadequate quality assurance system.

26. As a direct and proximate cause of the foregoing defects and conditions in the Subject Helicopter, the risks associated with the design of the YSAS system, YSAS actuator, and other parts and manuals outweigh their benefits, taking into account the potential harm to the helicopter occupants, the likelihood that this harm would occur, the existence of several alternative designs at the time of the design and manufacture, and the cost of safer alternative designs.

27. Additionally, as manufactured, designed, distributed, supplied, and sold, the Subject Helicopter, its failed YSAS system, YSAS actuator, and component parts, manuals, warnings, and literature were defective in that the Subject Helicopter suffered — without warning — catastrophic uncommand yaw, and loss of control during normal flight operations, causing the aircraft not to perform as safely as an ordinary consumer would have expected it to perform during its fatal flight on February 19, 2022.

28. The Subject Helicopter's defects were a substantial factor in causing the injuries and death to Decedent Nicholas Vella and damages to Plaintiffs, and Defendants are strictly liable.

29. The defects described herein were a substantial factor and the legal and proximate cause of the injuries, death, damages, and pain suffered by Decedent Nicholas Vella and Plaintiffs complained herein.

30. As a further direct and proximate result of the acts, conduct, and omissions of Defendants, Plaintiffs lost their beloved husband and father in the Subject Incident.

31. As a direct, legal and proximate result of the death of Decedent Nicholas Vella, Plaintiffs, and each of them, have suffered damages resulting from the loss of love, companionship, comfort, care, assistance, protection, affection, society, moral support, right of support, expectations of future support and counseling, solace, training, and guidance, as well as other benefits and assistance, of Decedent Nicholas Vella, all to Plaintiffs' noneconomic damages,

1  which will be stated according to proof, pursuant California Code of Civil Procedure §425.10.

2      32.    As a direct, legal and proximate result of the careless, negligent, and unlawful conduct of Defendants and DOES 1-100, inclusive, and each of them, Plaintiffs suffered damages resulting from the deprivation of financial support and assistance, loss of gifts, loss of future contributions and pecuniary benefits, all to Plaintiffs' economic damages, which will be stated according to proof, in accordance with California Code of Civil Procedure section 425.10.

    33.    As a direct, legal and proximate result of the careless, negligent, and unlawful conduct of Defendants and DOES 1-100, inclusive, and each of them, Plaintiffs have incurred economic expenses, including but not limited to funeral, burial, and/or incidental expenses related to the death of Decedent Nicholas Vella, in an amount to be determined according to proof, in accordance with California Code of Civil Procedure section 425.10.

    34.    As a direct, legal and proximate result of the conduct of Defendants and DOES 1-100, and each of them, and the resulting death of Decedent Nicholas Vella, as aforesaid, Plaintiffs have been compelled to incur expenses as well as other special damages, all to Plaintiffs' damages, in an amount to be shown according to proof.

## SECOND CAUSE OF ACTION

**(Product Liability- Negligence by All Plaintiffs Against All Defendants and DOES 1-100, Inclusive)**

    35.    Plaintiffs incorporate by reference each prior and subsequent allegation as though fully set forth herein.

    36.    Plaintiffs are informed and believe, and thereon allege, that at all times herein Defendants were engaged in the business of, among other things, designing, manufacturing, inspecting, testing, training, marketing, distributing, advertising, warranting, supplying, licensing, selling, authoring, publishing, and monitoring its products in the market place including the Subject Helicopter, its airframe, failed YSAS system and actuator, and component parts, manuals, warnings, and literature.

    37.    At all times herein Defendants, so negligently, carelessly, and recklessly, among

9
COMPLAINT FOR DAMAGES

other things, designed, manufactured, assembled, inspected, tested, trained, warranted, authored, published, distributed, and sold the 500N series helicopter and its component parts, to include the YSAS system, and all related manuals, warnings, and literature, so as to be the direct and proximate cause of the loss of control during normal and foreseeable use, causing the crash and resultant injuries, death, and damages to Decedent Nicholas and Plaintiffs as described herein.

38. The negligence described herein were a substantial factor and the legal and proximate cause of the injuries, death, damages, and pain suffered by Decedent Nicholas Vella and Plaintiffs complained herein.

39. As a further direct and proximate result of the acts, conduct, and omissions of Defendants, Plaintiffs lost their beloved husband and father in the Subject Incident.

40. As a direct, legal and proximate result of the death of Decedent Nicholas Vella, Plaintiffs, and each of them, have suffered damages resulting from the loss of love, companionship, comfort, care, assistance, protection, affection, society, moral support, right of support, expectations of future support and counseling, solace, training, and guidance, as well as other benefits and assistance, of Decedent Nicholas Vella, all to Plaintiffs' noneconomic damages, which will be stated according to proof, pursuant California Code of Civil Procedure §425.10.

41. As a direct, legal and proximate result of the careless, negligent, and unlawful conduct of Defendants and DOES 1-100, inclusive, and each of them, Plaintiffs suffered damages resulting from the deprivation of financial support and assistance, loss of gifts, loss of future contributions and pecuniary benefits, all to Plaintiffs' economic damages, which will be stated according to proof, in accordance with California Code of Civil Procedure section 425.10.

42. As a direct, legal and proximate result of the careless, negligent, and unlawful conduct of Defendants and DOES 1-100, inclusive, and each of them, Plaintiffs have incurred economic expenses, including but not limited to funeral, burial, and/or incidental expenses related to the death of Decedent Nicholas Vella, in an amount to be determined according to proof, in accordance with California Code of Civil Procedure section 425.10.

43. As a direct, legal and proximate result of the conduct of Defendants and DOES 1-100, and each of them, and the resulting death of Decedent Nicholas Vella, as aforesaid, Plaintiffs

have been compelled to incur expenses as well as other special damages, all to Plaintiffs' damages, in an amount to be shown according to proof.

### THIRD CAUSE OF ACTION

**(Breach of Warranties by All Plaintiffs Against All Defendants and DOES 1-100, Inclusive.)**

44. Plaintiffs incorporate by reference each prior and subsequent allegation as though fully set forth herein.

45. Defendants expressly and impliedly represented, among other things, that the Subject Helicopter, including but not limited to its failed YSAS system and actuator, designed, manufactured, distributed, and sold by Defendants, were safe, airworthy, met or exceeded airworthiness standards, and were of merchantable quality.

46. Defendants did not disclose to Plaintiffs or Decedent Nicholas Vella that the Subject Helicopter was susceptible to the loss of its YSAS system and actuator and the resulting risk of catastrophic loss of control during foreseeable flight operations.

47. At all times herein relevant, Defendants held themselves out to purchasers, users, passengers, operators, as among the world's leading producer of safe and reliable helicopters.

48. At all times herein relevant, Defendants further expressly and impliedly represented, among other things, that they place great emphasis on research and development and that they maintains the highest standards for the design, manufacture, manuals, training, and service of their helicopters and component parts, including the YSAS system and actuator.

49. Defendants had been put on notice of said defects and, by way of this complaint, Plaintiffs provide further notice to each of them, or are otherwise not required to do so by law.

50. In the condition in which the Subject Helicopter was sold and delivered, it was not suitable for its intended purpose and use, was unairworthy, and failed to meet design, manufacturing, and assembly standards resulting in injuries and death to Decedent Nicholas Vella, and damages suffered by Plaintiffs.

51. At the time of the purchase, Defendants knew or had reason to know that Decedent Nicholas Vella intended to use the product without inspection for defects, for the particular

11
COMPLAINT FOR DAMAGES

1 purpose of flight.

2   52.   At the time of purchase, Defendants knew or had reason to know that Decedent Nicholas Vella was relying upon their skill and judgment to select, furnish, design, manufacture, distribute, publish, and sell a product that was suitable for the particular purpose.

53.   Decedent Nicholas Vella justifiably relied on Defendants' skills and judgment in making the decision to use and ride in the Subject Helicopter.

54.   With its inherent manufacturing and design defects, the product was not suitable for the particular purpose.

55.   As a direct and proximate result of the unsuitability of the product and its failure to meet the intended purposes, the Subject Helicopter suffered the loss of control during normal flight and crashed, and Decedent Nicholas Vella was killed as a result of Defendants' failures to provide a product suitable for the particular purposes *to wit*, safe air transportation.

56.   Defendants expressly represented that the Subject Helicopter was safe and airworthy when, in fact, it was not. These warranties ran to Decedent Nicholas Vella as an intended user and beneficiary.

57.   Defendants made assurances to Decedent Nicholas Vella that the Subject Helicopter was safe, airworthy, and that it conformed to Defendants' stated methods of producing helicopters, and that component parts, to include the YSAS system, were designed and manufactured to the highest quality and complied with all required airworthiness standards.

58.   Contrary to the express and implied representations made by Defendants, the Subject Helicopter contained, among other things, dangerous, defective characteristics of its design, including but not limited to the failed YSAS system and actuator, and other parts, rendering it unsafe, and therefore not designed, manufactured, distributed, and sold as expressly represented by Defendants.

59.   Defendants' failure to provide a helicopter and component systems suitable for Decedent Nicholas Vella's use, as expressly or impliedly represented, was a substantial factor in causing the crash, injuries and death to Decedent Nicholas Vella, and damages suffered by Plaintiffs.

12
COMPLAINT FOR DAMAGES

60. As a further direct and proximate result of the acts, conduct, and omissions of Defendants, Plaintiffs lost their beloved husband and father in the Subject Incident.

61. As a direct, legal and proximate result of the death of Decedent Nicholas Vella, Plaintiffs, and each of them, have suffered damages resulting from the loss of love, companionship, comfort, care, assistance, protection, affection, society, moral support, right of support, expectations of future support and counseling, solace, training, and guidance, as well as other benefits and assistance, of Decedent Nicholas Vella, all to Plaintiffs' noneconomic damages, which will be stated according to proof, pursuant California Code of Civil Procedure §425.10.

62. As a direct, legal and proximate result of the careless, negligent, and unlawful conduct of Defendants and DOES 1-100, inclusive, and each of them, Plaintiffs suffered damages resulting from the deprivation of financial support and assistance, loss of gifts, loss of future contributions and pecuniary benefits, all to Plaintiffs' economic damages, which will be stated according to proof, in accordance with California Code of Civil Procedure section 425.10.

63. As a direct, legal and proximate result of the careless, negligent, and unlawful conduct of Defendants and DOES 1-100, inclusive, and each of them, Plaintiffs have incurred economic expenses, including but not limited to funeral, burial, and/or incidental expenses related to the death of Decedent Nicholas Vella, in an amount to be determined according to proof, in accordance with California Code of Civil Procedure section 425.10.

64. As a direct, legal and proximate result of the conduct of Defendants and DOES 1-100, and each of them, and the resulting death of Decedent Nicholas Vella, as aforesaid, Plaintiffs have been compelled to incur expenses as well as other special damages, all to Plaintiffs' damages, in an amount to be shown according to proof.

## FOURTH CAUSE OF ACTION

**(Survival Action by Plaintiff Kristi Cameron Tovar Against All Defendants and DOES 1-100, Inclusive.)**

65. Plaintiff re-alleges and incorporates herein by reference each and every allegation and statement contained in the prior paragraphs.

66. Plaintiff is informed and believes, and thereon alleges, that the aforementioned Subject Incident that gave rise to this lawsuit caused Plaintiffs' Decedent Nicholas Vella to suffer traumatic and life-threatening injuries.

67. After the foregoing causes of action arose in his favor, Decedent Nicholas Vella, who would have been the Plaintiff in this action if he had lived, passed away.

68. Plaintiff Kristi Cameron Tovar, the surviving spouse of Decedent Nicholas Vella, as Successor-in-Interest pursuant to California Code of Civil Procedure § 377.11, brings this Survival cause of action pursuant to California Code of Civil Procedure § 377.30.

69. Plaintiff Kristi Cameron Tovar is informed and believes, and thereon alleges, that as a legal, direct and proximate result of the unlawful, reckless and negligent conduct of Defendants, and each of them, as aforesaid, following the Subject Incident in which Decedent Nicholas Vella sustained numerous traumatic injuries to his person, Decedent Nicholas Vella survived for an appreciable period of time after the initial impact and/or initial injury before subsequently dying.

70. Decedent sustained severe injuries to his body that, as a legal, direct and proximate result of the conduct, actions, negligence, recklessness, carelessness, and violation of the law by all Defendants and DOES 1-100, inclusive, and each of them, ultimately resulted in his death, and therefore, Plaintiff Kristi Cameron Tovar, as Decedent Nicholas Vella's Successor-in-Interest, seeks all damages accruing to Decedent Nicholas Vella in a Survival Action, pursuant to California Code of Civil Procedure § 377.34, including pre-death injuries and pre-death pain and mental suffering, loss of enjoyment of life, disfigurement, physical impairment, inconvenience, grief, anxiety, humiliation, and serious emotional distress.

71. All of said damages combine to a sum in excess of the jurisdictional minimum of this Court, including any damages Decedent Nicholas Vella would have been entitled to had he lived, including pre-death injuries and pre-death pain and mental suffering, loss of enjoyment of life, disfigurement, physical impairment, inconvenience, grief, anxiety, humiliation, and serious emotional distress, which will be stated according to proof, pursuant to California Code of Civil Procedure § 425.10.

**PRAYER OF RELIEF**

WHEREFORE, Plaintiffs pray judgment against all Defendants and DOES 1-100, inclusive, as follows:

1. For past and future general damages (also known as non-economic damages);
2. For damages for pre-death pain, suffering, and disfigurement;
3. For past and future special damages (also known as economic damages);
4. For funeral and burial expenses, according to proof;
5. For past hospital, medical, professional, and incidental expenses, according to proof;
6. For all past and future damages;
7. For loss of personal property and income according to proof;
8. For pre-judgment and post-judgment interest, according to proof;
9. For costs of suit, according to proof;
10. For all statutorily allowed damages, including attorney's fees, court costs, and other litigation expenses, according to proof; and
11. For such other and further relief as this Court may deem just and proper.

DATED:  February 15, 2024                    PANISH | SHEA | RAVIPUDI LLP

By: _____
  Adam Shea
  Ryan Casey
  Nicholas W. Yoka
  Attorneys for Plaintiffs

**DEMAND FOR TRIAL BY JURY**

Plaintiffs hereby demand a trial by jury as to all causes of action.

DATED: February 15, 2024          PANISH | SHEA | RAVIPUDI LLP

By: _____
    Adam Shea
    Ryan Casey
    Nicholas W. Yoka
    Attorneys for Plaintiffs